UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

HENRY JACKSON,                                         :
                                                       :
                              Plaintiff,               :
                                                       :
              -against-                                :   **REPORT AND RECOMMENDATION**
                                                       :
                                                       :
NEW YORK STATE OFFICE OF MENTAL                        :        11 Civ. 7832 (GBD)(KNF)
HEALTH,                                                :
                                                       :
                              Defendant.               :
-------------------------------------------------------------X

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE GEORGE B. DANIELS, UNITED STATES DISTRICT JUDGE

## INTRODUCTION

Henry Jackson ("Jackson"), proceeding pro se, commenced this action for damages and injunctive relief on November 1, 2011, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e–2000e-17 ("Title VII") and the New York City Administrative Code, §§ 8-101–8-131, against the New York State Office of Mental Health ("OMH"). He alleged, inter alia, that OMH: (1) failed to promote him; (2) imposed unequal terms and conditions of employment on him; and (3) retaliated against him for filing a Freedom of Information Law ("FOIL") request. Before the Court is OMH's motion to dismiss the complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Jackson opposes the motion.

## BACKGROUND

***Plaintiff's Complaint***

The following are allegations in the complaint:

On or about January 25, 2008, Jackson responded to an advertisement in the New York Times posted by OMH "soliciting applications for the position of Treatment Team Leader – Program Director with The Bronx Children's Psychiatric Center."  He submitted an application and was selected for two rounds of interviews.  On March 7, 2008, Kevin Kurtz ("Kurtz"), director of administration, "extended a written offer to [Jackson] for the position of Treatment Team Leader ("TTL") . . . effective April 7, 2008," which Jackson accepted.  In reliance upon the offer, on April 4, 2008, Jackson resigned from his Administrative Supervisor position with the Jewish Child Care Association.

On April 8, 2008, the day after he assumed his new position at the Bronx Children's Psychiatric Center ("BCPC"), Jackson was informed by Kurtz that OMH had mistakenly hired him as the TTL, explaining that the TTL position was designated for internal promotion within OMH, so Jackson, as an external hire, was not eligible.  However, "[t]here was nothing in the ad which suggested that this was an internal OMH promotion position."  In addition, because "there was no in-house staff qualified for the position," Jackson could have been hired as TTL, "as allowed by Civil Service rule 4.2b."  Instead, Kurtz notified Jackson that he would be hired as a Licensed Master Social Worker 2 ("LMSW 2"), at a lower salary, that "would be supplemented by adding 10 hours of over time [sic]," so that Jackson's total compensation as a LMSW 2 would be commensurate with his salary expectations for the TTL position for which he was originally hired.  Kurtz and Christopher Meyers ("Meyers"), BCPC's acting executive director, "routinely approved" Jackson's overtime authorization roster from the beginning of his employment at BCPC, on April 7, 2008, until his promotion to Social Work Supervisor 1 ("SWS 1"), on July 3, 2009.

Initially, Jackson's employment as a LMSW 2 was provisional, but on June 11, 2008, Kurtz changed Jackson's status from provisional to contingent-permanent, provided that he completed a one-year probationary period successfully.  During this probationary period, Jackson received "Satisfactory" or "Outstanding" ratings from Kurtz and Meyers, and "[n]o evaluation during this period said anything negative about [Jackson's] time and attendance."  In an e-mail message dated July 8, 2008, Karen Davis ("Davis"), associate personnel administrator, noted that, after three months of permanent service as a LMSW 2, Jackson would "be eligible for a provisional appointment to TTL."  According to the timeline described in Davis's e-mail message, Jackson became eligible for provisional promotion to the TTL position, on or about September 9, 2009.

On June 10, 2009, Carol Taft, director of human resource management, notified Jackson that he had completed his one-year probationary period in the title LMSW 2, and on June 11, 2009, Jackson became eligible for the SWS 1 position.  Jackson was promoted provisionally to that position, instead of to the TTL position as he had expected, in July 2009.  However, as a result of the promotion to SWS 1, Jackson "suffered a diminution in pay because OMH cut his ability to earn any overtime pay."  Kurtz confirmed to Jackson that in his new position he "would not be eligible for overtime since this was a managerial position with a different union from his previous title of LMSW 2."

On July 20, 2009, Kurtz informed Jackson that he would be reassigned to a different position, "due to a complaint filed to the Governor's office in Albany by Jeff Greenlinger" ("Greenlinger").  According to Kurtz, Greenlinger had complained that Jackson "was not working the [overtime] hours he submitted."  On July 27, 2009, Meyers re-assigned Jackson to

the BCPC director of community relations position.

As a result of Greenlinger's allegation, Jackson met with Leona Moore, the associate personnel administrator, who tendered a letter, informing him that he was scheduled to meet with Tony Dorangrichia ("Dorangrichia"), on April 27, 2009, as part of an investigation into Jackson's overtime records. The letter stated further that the meeting was part of an "Official Interrogation" that could subject Jackson to disciplinary action in the future.

Jackson met with Dorangrichia, without having a union representative or private counsel accompany him. Dorangrichia accused Jackson of arriving late to work, in the morning, and leaving early in the afternoon, frequently; however, Jackson explained that, "due to the hectic work place environment involving children with special needs, he often took work home after hours to complete." After Dorangrichia concluded his investigation, Kurtz informed Jackson, on September 21, 2009, that OMH had dismissed Greenlinger's overtime complaint. However, during the course of the investigation, OMH determined that, from June 2 to July 24, 2009, Jackson was arriving to work late and leaving early, based on records produced by the access card Jackson used to enter his worksite. Accordingly, one or two months later, Kristen Riley ("Riley"), acting OMH deputy commissioner for the Division of Children and Family Services, demoted Jackson from SWS 1 to his former position, LMSW 2, for "time and attendance issue[s]."

Moving Jackson between positions and demoting him, Jackson believes, "[appear] to have been part of an underlying scheme to not have him in the TTL position or any other administrative position." Jackson contends that everyone involved in keeping him out of an administrative position – Riley, Kurtz, and Meyers – is Caucasian, while Jackson is African-

-4-

American.

On or about September 30, 2010, Jackson filed a FOIL request with OMH and obtained an excised copy of Dorangrichia's report of his findings regarding allegations respecting Jackson's overtime, and time and attendance records.  Thereafter, OMH pursued "a new agenda to undermine [Jackson's] work, time and attendance, and relationships with staff."

On or about April 21, 2011, Jackson's immediate supervisor, Maria Portalatin ("Portalatin"), informed him that her supervisor, Denise Francois ("Francois"), director of inpatient services, had questioned her judgment for determining to give Jackson a positive performance evaluation.  On April 29, 2011, Francois gave Jackson his performance evaluation, after altering portions of Portalatin's assessment to "make it appear that [Jackson] was not a team player and that he lacked certain skills."  More specifically, Francois revised Jackson's performance evaluation, so that he received a "U" rating, indicating the performance standard was "Unmet" under the category "Complies with staffing scheduling guidelines and procedures: unscheduled absences do not exceed facility guidelines" and a "T" rating, indicating "Training need identified" under the category "Maintains positive working relationships and fosters a cooperative work environment."  Jackson asserts that Francois downgraded Jackson's evaluation in retaliation for his September 30, 2010 FOIL request and "to give the new supervisor, Jill Emmanuelle[,] a paper trail to follow to set [him] up for a subsequent downgraded retaliation."

On July 27, 2011, Jackson filed a claim with the Equal Employment and Opportunity Commission ("EEOC").  On October 5, 2011, he received a "Dismissal and Notice of Rights" letter.  Twenty-six days later, on November 1, 2011, Jackson commenced this action.

***Defendant's Contentions***

OMH contends that certain of Jackson's Title VII claims are time-barred because he failed to file a charge of discrimination with the EEOC within 300 days of the alleged discriminatory conduct, as required by the statute. According to OMH, the only timely-filed claim, regarding a discriminatory act – a negative performance evaluation – does not demonstrate that an adverse employment action, within the meaning of Title VII's anti-discrimination clause, occurred because Jackson "fails to allege any negative repercussions attached to the evaluation." OMH also contends that Jackson failed to allege a Title VII retaliation claim because he did not assert that he engaged in a protected activity or that OMH was aware of his participation in any such activity, and no causal connection exists between his filing the FOIL request and the alleged downgrade in his performance evaluation. Additionally, OMH contends that Jackson's New York City Administrative Code claims are barred because OMH is a state agency that enjoys the protection of sovereign immunity provided by the Eleventh Amendment.

***Plaintiff's Contentions***

Jackson's opposition to OMH's motion recites many of the facts alleged in his complaint. In addition, despite asserting in the complaint that he received a negative performance evaluation in retaliation for his submitting a FOIL request, Jackson now argues that he "was given an unfavorable evaluation, due to filing a discrimination suit with the EEOC against the defendant." Jackson also contends, for the first time, that OMH violated his constitutional rights under the Due Process Clause of the Fourteenth Amendment because "no representation [was] made available to [him] prior to entering the meeting with Mr. Dorangrichia" in connection with the

investigation into Jackson's overtime, and time and attendance records.  He also asserts, for the first time, that he has "been a victim of unfair labor practices" perpetrated by OMH, and that OMH engaged in "misrepresentation of employment."  Though Jackson does not address OMH's arguments in his opposition to the motion, he does contend that Meyers told him that "OMH had one year to bring additional charges [against Jackson] for disciplinary actions," and that this amounted to a "ploy by the defendant with regards to depleting the amount of time allowed before the claim of statute of limitations . . . could be invoked by the defendant."  The Court interprets Jackson's assertion as an attempt to invoke the doctrine of equitable estoppel.

### Defendant's Reply

OMH maintains that Jackson failed to address its arguments in his opposition to its motion.  In response to Jackson's new argument, that he received a negative performance evaluation in retaliation for filing an EEOC complaint, OMH contends that Jackson cannot maintain a claim for retaliation on the facts set forth in his complaint because, having received his negative performance evaluation three months prior to filing his EEOC complaint, Jackson cannot establish the requisite causal relationship between his protected activity and the alleged retaliatory act.  Moreover, OMH asserts that Jackson cannot raise a new claim, predicated on an alleged violation of his rights under the Due Process Clause of the Fourteenth Amendment, in his opposition to OMH's motion to dismiss.  According to OMH, even if the Court were to consider Jackson's due process claim against OMH, the claim would be barred by the Eleventh Amendment.

## DISCUSSION

***Legal Standard***

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)(citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The plausibility standard demands "more than a sheer possibility that [the] defendant has acted unlawfully." Id. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotation marks omitted). Thus, unless a plaintiff has "nudged [his] claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007).

In considering a motion to dismiss, the court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the [p]laintiff's favor. See Faber v. Metro. Life Ins. Co., 648 F.3d 98, 104 (2d Cir. 2011). The court is not limited to the face of the complaint and may also consider "documents attached to the complaint as exhibits . . . and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010)(citation omitted). Where the plaintiff is a pro se litigant the court has the duty to "read the pleadings . . . liberally and interpret them to 'raise the strongest arguments that they suggest.'" McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir.

1999)(citations omitted).  Nonetheless, courts are "not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949-50 (internal quotation marks omitted).

***Statute of Limitations***

OMH's motion to dismiss Jackson's claims as untimely is properly analyzed under Rule 12(b)(6).  See Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 162 (2d Cir. 1989)(allowing assertions of a statute of limitations defense under a Rule 12(b)(6) motion to dismiss).  Prior to bringing a suit alleging violations of Title VII, a plaintiff must first file a charge of discrimination with the EEOC or an appropriate state agency, if one exists, within the statutory time period.  See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109, 122 S. Ct. 2061, 2070 (2002).  Title VII provides, in relevant part, that:

> A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred . . . .

> 42 U.S.C. § 2000e–5(e)(1).

Accordingly, the time within which a plaintiff must file a charge of discrimination with the EEOC depends on whether a charge has been filed initially with an appropriate state agency.

Here, OMH concedes that "the applicable time period to file an administrative charge is 300 days."  This 300-day filing period "functions as a statute of limitations . . . in that

discriminatory incidents not timely charged before the EEOC will be time-barred upon the plaintiff's suit in district court." Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir. 1998)(internal citation omitted).

"Congress has decided that time limitations periods commence with the date of the alleged unlawful employment practice," Del. State Coll. v. Ricks, 449 U.S. 250, 259, 101 S. Ct. 498, 505 (1980)(internal quotation marks and citation omitted), and that a discrete discriminatory act "occur[s] on the day that it happen[s]." Morgan, 536 U.S. at 110, 122 S. Ct. at 2070. "A party, therefore, must file a charge [with the EEOC] within . . . 300 days of the date of the act or lose the ability to recover for it." Id. at 110, 122 S. Ct. at 2071; see also 42 U.S.C. § 2000e–5(e)(1).

While Jackson alleges that beginning in April 2008 and continuing through April 2011, he was the victim of a number of discriminatory acts, only incidents occurring within the statutory limitations period are actionable. Jackson filed a charge of discrimination with the EEOC on July 27, 2011. The statute of limitations period commenced 300 days prior to July 27, 2011, on October 1, 2010. Accordingly, Jackson's Title VII claims, based on discriminatory conduct that occurred prior to October 1, 2010, are time-barred, unless Jackson can successfully invoke the continuing-violation exception to the statute of limitations.

The Continuing-Violation Exception

"When, as in this case, a plaintiff's allegations of discrimination extend beyond the 300-day limitations period, the nature of the claim determines what consideration will be given to the earlier conduct." Petrosino v. Bell Atl., 385 F.3d 210, 220 (2d Cir. 2004). Under the continuing violation doctrine, "if a plaintiff has experienced a continuous practice and policy of

discrimination, . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." Fitzgerald v. Henderson, 251 F.3d 345, 359 (2d Cir. 2001)(internal quotation marks and citation omitted). "To bring a claim within the continuing violation exception, a plaintiff must at the very least allege that one act of discrimination in furtherance of the ongoing policy occurred within the limitations period." Patterson v. County of Oneida, 375 F.3d 206, 220 (2d Cir. 2004)(citation omitted). However, "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire . . . are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Morgan, 536 U.S. at 113-15, 122 S. Ct. at 2072-73. "Instead, '[e]ach . . . discriminatory act starts a new clock for filing charges alleging that act,' . . . and even serial violations – a series of discrete but related acts of discrimination – do not warrant application of the continuing violations doctrine." Milani v. Int'l Bus. Machs., 322 F. Supp. 2d 434, 452 (S.D.N.Y. 2004)(quoting Morgan, 536 U.S. at 113, 122 S. Ct. at 2072)(internal citation omitted).

Jackson contends that OMH downgraded his performance evaluation because he submitted a FOIL request for information pertaining to the investigation into his overtime and time and attendance records. The April 29, 2011 performance evaluation occurred within the 300-day statute of limitations period because the EEOC complaint was filed on July 27, 2011. A negative performance evaluation, however, is a discrete act, see Siddiqi v. New York City Health & Hosps. Corp., 572 F. Supp. 2d 353, 366 (S.D.N.Y. 2008)(citations omitted), and, thus, cannot trigger the continuing violations doctrine. See Morgan, 536 U.S. at 112, 122 S. Ct. at 2071 ("[D]iscrete acts that fall within the statutory period do not make timely acts that fall outside the time period.")(citation omitted).

-11-

In addition, the alleged discriminatory acts outside the statute of limitations period – refusal to retain Jackson for the TTL position for which he was hired, failure to promote him to TTL from LMSW 2, promotion to the SWS 1 with a diminution of pay, reassignment to the director of community relations position, and demotion to LMSW 2 – are all "discrete acts."  See Morgan, 536 U.S. at 111, 122 S. Ct. at 2071 (noting that refusal to hire is a discrete act); Chin v. Port Auth. of New York & New Jersey, 685 F.3d 135, 157 (2d Cir. 2012)(holding that "an employer's failure to promote is by its very nature a discrete act"); Crosland v. City of New York, 140 F. Supp. 2d 300, 308 (S.D.N.Y. 2001)("It is well-established that . . . failure to compensate adequately . . . [is] a[ ] discrete act[ ] which do[es] not constitute a continuing violation."); Gutierrez v. City of New York, 756 F. Supp. 2d 491, 500 (S.D.N.Y. 2010)("[J]ob reassignments are discrete acts that cannot form the basis for a continuing violation claim.")(citations omitted); LaBeach v. Nestle Co., Inc., 658 F. Supp. 676, 688 (S.D.N.Y. 1987)(explaining that a "demotion, like a termination, is a discrete act which is consummated at the time it is made, and is not of a continuing nature").  These discrete acts are not within the scope of the continuing violations doctrine.  See Chin, 2012 WL 2760776, at *16 ("Discrete acts of this sort, which fall outside the limitations period, cannot be brought within it. . . .").  Thus, the continuing violation doctrine does not save Jackson's claims.  Accordingly, all discrete discriminatory acts allegedly committed by OMH prior to October 1, 2010, are time-barred.

Equitable Estoppel and Tolling

Jackson alleges that OMG engaged in a "ploy" to "deplet[e] the amount of time allowed before the claim of statute of limitations . . . could be invoked by the defendant."  Since the statutory time period for filing a charge of discrimination with the EEOC "is subject to equitable

doctrines such as tolling or estoppel," Morgan, 536 U.S. at 113, 122 S. Ct. at 2072 (citing Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 102 S. Ct. 1127, 1132 (1982)), the Court considers each doctrine in turn.

"[E]quitable estoppel is invoked in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay in bringing his lawsuit." Cerbone v. Int'l Ladies' Garment Workers' Union, 768 F.2d 45, 50 (2d Cir. 1985)(citations omitted). The doctrine is particularly apposite when "the employer has misrepresented the length of the limitations period or in some other way has lulled the plaintiff into believing that it was not necessary for him to commence litigation." Dillman v. Combustion Eng'g, Inc., 784 F.2d 57, 61 (2d Cir. 1986) (internal quotation marks and citation omitted). "Such an estoppel arises if [1] the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and [2] the plaintiff reasonably relied on that misrepresentation to his detriment." Kavowras v. New York Times Co., 328 F.3d 50, 56 (2d Cir. 2003)(internal quotation marks and citations omitted).

Jackson's conclusory allegations that OMH stated that it "had one year to bring additional charges [against him] for disciplinary actions," and that this amounted to a "ploy by the defendant with regards to depleting the time allowed before the claim of statute of limitations . . . could be invoked by the defendant," are insufficient to make the doctrine of equitable estoppel applicable, because Jackson did not allege that OMH misrepresented to him the statutory period for filing a charge of discrimination with the EEOC or that he acted in reasonable reliance on that representation. In addition, the sparse facts alleged by Jackson relate to the one-year period OMH had to file additional charges for disciplinary actions against him

and do not suggest that OMH lulled him into believing it was not necessary for him to file his complaint until November 1, 2011.  Thus, the equitable estoppel doctrine does not apply.

"[E]quitable tolling is only appropriate in [] rare and exceptional circumstances."  Zerilli-Edelglass v. New York City Transit Authority, 333 F.3d 74, 80 (2d Cir. 2003)(internal quotation marks and citations omitted).  "The essence of the doctrine is that a statute of limitations does not run against a plaintiff who is unaware of his cause of action."  Cerbone, 768 F.2d at 48 (citation and internal quotation marks omitted).  "When determining whether equitable tolling is applicable, a . . . court must consider whether the person seeking application of the applicable tolling doctrine (1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply."  Zerilli-Edelglass, 333 F.3d at 80-81 (internal quotation marks and citation omitted).  Although courts will consider a litigant's pro se status as a factor in determining whether equitable tolling is appropriate, that status is not an independent basis for invoking the doctrine to avoid application of the statute of limitations.  See Doe v. Menefee, 391 F.3d 147, 175 (2d Cir. 2004)(holding that "pro se status does not in itself constitute an extraordinary circumstance meriting tolling").

Jackson asserts he "has come to learn that . . . state agencies have often posted job listing[s] to the public when there was no in-house staff qualified for the position" and "OMH could have followed this rule 4.2b . . .to appoint [him] to the position of Treatment Team Leader."  These allegations suggest that Jackson was unaware, at least for some period of time, that he had a Title VII claim arising from OMH's failure to promote him pursuant to Civil Service Rule 4.2b at the time the claim accrued.  However, in the absence of an allegation

identifying when Jackson became aware of his Title VII claims, the Court cannot conclude that Jackson acted with reasonable diligence in pursuing his claim during the statutory period once he was cognizant of it.  In addition, Jackson does not assert, nor does the Court find, based on the complaint, that extraordinary circumstances existed preventing him from filing a timely discriminatory charge with the EEOC.  Accordingly, Jackson is not entitled to the benefits of the equitable tolling doctrine.

Therefore, all Jackson's claims arising from alleged, discrete discriminatory acts committed prior to October 1, 2010, are barred by the 300-day statute of limitations, and the facts do not warrant the Court in exercising its equitable powers to save them.  The only discriminatory act committed within the statute of limitations period is giving Jackson the negative performance evaluation on April 29, 2011.

### Title VII Discrimination Claim

To establish a claim of employment discrimination under Title VII, a plaintiff must allege "(1) that he belonged to a protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent."  See Chin, 685 F.3d at 151 (citing Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004)).

"An adverse employment action is a "materially adverse change in the terms and conditions of employment. . . ."  Demoret v. Zegarelli, 451 F.3d 140, 151 (2d Cir. 2006)(internal quotation marks and citation omitted).  "To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities."  Mathirampuzha v. Potter, 548 F.3d 70, 78 (2d Cir. 2008)(citation omitted).

"[A] negative job evaluation may constitute [an] adverse employment action in certain circumstances."  Sanders v. New York City Human Res. Admin., 361 F.3d 749, 756 (2d Cir. 2004)(citation omitted).  However, "negative evaluations are adverse employment actions only if they affect ultimate employment decisions such as promotions, wages or termination."  Hicks v. Baines, 593 F.3d 159, 170 (2d Cir. 2010)(internal quotation marks and citation omitted).

Jackson points to his April 29, 2011 negative performance evaluation as an adverse employment action, asserting that his supervisor's superior, Francois, downgraded his performance ratings "to give the new supervisor, Jill Emmanuelle[,] a paper trail to follow to set [Jackson] up for a subsequent downgraded evaluation."  Jackson's conclusory assertion that his negative performance evaluation could lead to another poor review does not constitute an adverse employment action because Jackson fails to allege that the negative evaluation adversely affected his compensation, benefits, responsibilities, job title, or otherwise affected the terms and conditions of his employment.  See Siddiqi, 572 F. Supp. 2d at 367 ("[N]egative evaluations, standing alone without any accompanying adverse results, are not cognizable.")(citation omitted).  Thus, because the complaint is devoid of any allegations that Jackson experienced adverse consequences as a result of the negative performance evaluation, he has failed to allege that he suffered an adverse employment action, as contemplated by Title VII.

***Title VII Retaliation Claim***

"To establish a prima facie case of retaliation, an employee must show that (1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected

activity and that adverse action." Lore v. City of Syracuse, 670 F.3d 127, 157 (2d Cir. 2012)(citation omitted).

Protected Activity

In the context of a Title VII retaliation claim, a plaintiff engages in protected activity when "he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a); see also Deravin v. Kerik, 335 F.3d 195, 203 (2d Cir. 2003). In addition, "for an employee's complaints to be a 'protected activity,' they must relate to [an] alleged violation of Title VII, i.e., the complaints must relate to race or gender [discrimination]." Clemente v. New York State Div. of Parole, 684 F. Supp. 2d 366, 373 (S.D.N.Y. 2010)(citation omitted).

Jackson has not alleged that he engaged in any protected activity within the meaning of the statute. Jackson claims only that he received a revamped performance evaluation on April 29, 2011, because he submitted a FOIL request on September 30, 2010, to obtain an unexcised copy of Dorangrichia's 2009 report. However, making a FOIL request does not constitute opposing an unlawful employment practice, cf. Sumner v. United States Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990)(noting that protected "opposition" activities include "making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges"), nor does it constitute part of an investigation, proceeding, or hearing conducted in connection with his discrimination complaints. Additionally, Jackson does not allege that his FOIL request for information pertaining to Dorangrichia's investigation into his overtime hours

-17-

and time and attendance records relates to discrimination.  Therefore, Jackson failed to assert

that he engaged in protected activity within the meaning of Title VII's anti-retaliation provision.

Employer's Awareness of the Protected Activity

"[I]mplicit in the requirement that the employer have been aware of the protected activity

is the requirement that it understood, or could reasonably have understood, that the plaintiff's

opposition was directed at conduct prohibited by Title VII." Galdieri-Ambrosini v. Nat'l Realty

& Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998).  Even assuming that Jackson's FOIL request

constituted a protected activity within the meaning of Title VII, and Jackson believed he was the

victim of racial discrimination, the complaint is devoid of any plausible, non-conclusory

allegations that OMH understood or could have reasonably understood Jackson's submission of

a FOIL request for information relating to Dorangrichia's investigation into his overtime and

time and attendance records to constitute opposition to discriminatory conduct proscribed by

Title VII.  Accordingly, Jackson failed to allege that OMH was aware of any protected activity in

which Jackson engaged.

Adverse Employment Action

Title VII's "antiretaliation provision, unlike the substantive [antidiscrimination]

provision, is not limited to discriminatory actions that affect the terms and conditions of

employment." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 64, 126 S. Ct. 2405,

2412-13 (2006).  In addition, the anti-retaliation provision also "covers those . . . employer

actions that would have been materially adverse to a reasonable employee or job applicant . . . to

the point that they could well dissuade a reasonable worker from making or supporting a charge

of discrimination." Id. at 57, 126 S. Ct. at 2409.  Courts in this circuit, however, are split over

whether a negative performance evaluation could well dissuade a reasonable employee from making or supporting a charge of discrimination.  Compare Behringer v. Lavelle Sch. for the Blind, 08 Civ. 4899, 2010 WL 5158644, at *15 (S.D.N.Y. Dec. 17, 2010)(holding a "negative performance evaluation could plausibly dissuade a reasonable worker from exercising [his] [federally-protected] rights"), with Palmer-Williams v. Yale New Haven Hosp., 08 Civ. 1526, 2011 WL 1226022, at *10 (D. Conn. Mar. 27, 2011)(holding that "negative performance evaluations are not, in and of themselves, materially adverse, to the point at which they would dissuade a reasonable employee from engaging in protected activity.").

Jackson asserts that, in addition to downgrading his performance evaluation in retaliation for his submission of a FOIL request, Francois negatively altered his performance ratings "to give the new supervisor, Jill Emmanuelle[,] a paper trail to follow to set [Jackson] up for a subsequent downgraded evaluation."  Even if a single negative performance evaluation is insufficient to dissuade a reasonable employee from making or supporting a charge of discrimination, the threat of another poor performance evaluation, in addition to the original negative performance evaluation, is sufficiently adverse to dissuade a reasonable employee from lodging a complaint of discrimination.  See Krinsky v. Abrams, 01 Civ. 5052, 2007 WL 1541369, at *11 (E.D.N.Y. May 25, 2007)(holding that a "negative evaluation, or the threat of a negative evaluation, while not an adverse employment action that affects terms and conditions of employment, might dissuade[ ] a reasonable worker from making or supporting a charge of discrimination.")(internal quotation marks and citation omitted)(alteration in original).  Therefore, Jackson has alleged he suffered an adverse employment action within the scope of Title VII's anti-retaliation provision.

Causation

A causal connection between a protected activity and an adverse action "can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment . . . or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." Gordon v. New York City Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000)(citation omitted).  Jackson has not alleged directly any non-conclusory facts that OMH had a retaliatory motive in downgrading his performance evaluation.  Thus, the Court only considers whether Jackson made non-conclusory allegations of an indirect causal link between his September 30, 2010 FOIL request and the negative performance evaluation he received, on April 29, 2011.

While a "plaintiff can indirectly establish a causal connection to support a . . . retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action," Gorman-Bakos v. Cornell Coop Extension of Schenectady County, 252 F.3d 545, 554 (2d Cir. 2001)(internal quotation marks, brackets, and citation omitted), "the temporal proximity must be very close." Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74, 121 S. Ct. 1508, 1511 (2001)(internal quotation marks and citation omitted).  The Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship," Gorman-Bakos, 252 F.3d at 554, and has drawn different inferences about the causal connection between protected activities and adverse employment actions based upon the facts regarding temporal proximity that exist in a particular case, compare Hollander v. American Cyanamid Co., 895 F.2d 80, 85-86 (2d Cir. 1990)(finding no causal connection where there was a three-month gap between filing of an

EEOC complaint and an alleged retaliatory act), with Grant v. Bethlehem Steel Corp., 622 F.2d 43, 45-46 (2d Cir. 1980)(finding that the lapse of eight months between an EEOC complaint and a retaliatory act suggested a causal relationship).  Generally, courts in this circuit have held that the temporal nexus between the protected activity and the adverse employment action must be three months or less to establish a causal connection.  See e.g., Yarde v. Good Samaritan Hosp., 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005)("Three months is on the outer edge of what courts in this circuit recognize as sufficiently proximate to admit of an inference of causation."); Murray v. Visiting Nurse Servs. of New York., 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007)("[D]istrict courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation.")(collecting cases); Nicastro v. Runyon, 60 F. Supp. 2d 181, 185 (S.D.N.Y. 1999)("Claims of retaliation are routinely dismissed when as few as three months elapse between the protected EEO activity and the alleged act of retaliation.")(collecting cases).

In his complaint, Jackson asserts that he received his negative performance evaluation on April 29, 2011, whereas the alleged protected activity he cites as triggering the retaliation – submission of a FOIL request – occurred on September 30, 2010.  Given that courts in this circuit in the main hold that a time span longer than three months between the protected activity and the complained of retaliatory act is too remote to establish a causal connection, the passage of approximately seven months between Jackson's FOIL request submission and his receipt of the negative performance evaluation is too attenuated, in the circumstance of this case, to support a plausible allegation of causal connection.  Furthermore, no non-conclusory factual allegations exist connecting Jackson's filing of the FOIL request to his receipt of the negative

performance evaluation; the only allegation he makes is conclusory – that, after OMH learned of his FOIL request, it "set a new agenda to undermine his work, time and attendance, and relationships with staff" – and, as such, it is not sufficient to assert a plausible causal connection between the events.  See Hollander, 895 F.2d at 86 – (holding that conclusory allegations lacking the specificity to allege a connection between the protected activity and retaliatory act are insufficient to establish causation).

Since Jackson failed to allege he engaged in a protected activity of which OMH was aware and has not alleged a causal connection between a protected activity and a retaliatory act, he has failed to state a plausible claim for retaliation.

### *Jackson's New Claims*

In his opposition to the defendant's motion, Jackson contends, for the first time, that he received a negative performance evaluation in retaliation for filing a charge of discrimination with the EEOC.  He also contends, for the first time, that his right to "Due Process of law was violated, as [he] had no representation available to [him] prior to entering the meeting with Mr. Dorangrichia."  In addition, Jackson asserts, also for the first time, that he was "a victim of [OMH's] unfair labor practices," and that OMH engaged in "misrepresentation of employment." A plaintiff cannot amend his pleadings via his opposition to a motion to dismiss.  See O'Brien v. Nat'l Prop. Analysts Partners, 719 F. Supp. 222, 229 (S.D.N.Y. 1989)("[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss.").  Therefore, the Court has not considered these claims asserted for the first time in Jackson's opposition to the motion.

*Sovereign Immunity*

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity."  Woods v. Rondout Valley Cent. Sch. Dist. Bd of Educ., 466 F.3d 232, 236 (2d Cir. 2006)(citing Lapides v. Bd. of Regents, 535 U.S. 613, 618-19, 122 S. Ct. 1640, 1644 (2002)).  In addition, "[t]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to 'state agents and state instrumentalities' that are, effectively, arms of a state."  Id. (quoting Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429, 117 S. Ct. 900, 903 (1997)).  Thus, a state agency "is entitled to [Eleventh Amendment] immunity."  Mancuso v. New York State Thruway Auth., 86 F.3d 289, 292 (2d Cir. 1996)(internal quotation marks and citation omitted).

Jackson's claim against OMH, based on the New York City Administrative Code, is barred by sovereign immunity under the Eleventh Amendment.  OMH is a state agency, see New York Mental Hygiene Law § 7.01 ("[A] new autonomous agency to be known as the office of mental health has been established by this article."), and, as an arm of New York State, is entitled to immunity from suit in federal court, see Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100, 104 S. Ct. 900, 908 (1984) ("It is clear, of course, that in the absence of consent, a suit in which the State or *one of its agencies* or departments is named as the defendant is proscribed by the Eleventh Amendment.")(emphasis added).  While a state may waive its

sovereign immunity, the waiver must be "unequivocally expressed." Pennhurst, 465 U.S. at 99, 104 S. Ct. at 907.

In New York, "[t]he State Legislature waived sovereign immunity when it passed the New York State Human Rights Law and made its provisions applicable to the State." Jattan v. Queens Coll. of City Univ. of New York, 64 A.D.3d 540, 541-42, 883 N.Y.S.2d 110, 112 (App. Div. 2d Dep't 2009) (citing Koerner v. State of New York, Pilgrim Psychiatric Ctr., 62 N.Y.2d 442, 448, 478 N.Y.S.2d 584, 587 (1984)).  However, Jackson does not sue OMH under state law. His claims are made pursuant to the New York City Administrative Code, §§ 8-101–8-131. Jackson cannot sue OMH under the New York City Administrative Code because the New York Legislature did not expressly waive the state's immunity to suit under it, and "the City of New York does not have the power to waive the State's sovereign immunity by passing an antidiscrimination code provision applicable to instrumentalities of the State." Jattan, 64 A.D.3d at 542, 883 N.Y.S.2d at 112; see also Leiman v. State of New York, No. 98 Civ. 5538, 2000 WL 1364365, at *7 (S.D.N.Y. Sept. 21, 2000)("[T]here is no support for the proposition, that a political subdivision – in this case, New York City – could waive New York State's immunity. In any event, even if it were possible for New York City to waive New York State's immunity, plaintiff could not demonstrate that the Administrative Code contains the explicit language needed to do so.")(citation omitted).  Accordingly, Jackson's New York City Administrative Code claims are barred by sovereign immunity, perforce of the Eleventh Amendment.

## RECOMMENDATION

Accordingly, Jackson has failed to state a claim for relief that is plausible on its face. For the foregoing reasons, I recommend that OMH's motion to dismiss, Docket Entry. No. 11, be granted.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels, 500 Pearl Street, Room 1310, New York, New York, 10007, and to the chambers of the undersigned, 500 Pearl Street, Room 530, New York, New York, 10007.  Any requests for an extension of time for filing objections must be directed to Judge Daniels.  ***Failure to file objections within ten (10) days will result in a waiver of objections and will preclude appellate review.***  See Thomas v. Arn, 474 U.S. 140, 142, 106 S. Ct. 466, 468 (1985); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992).

Dated: New York, New York                           Respectfully submitted,
        August 13, 2012

                                                    _____
                                                    KEVIN NATHANIEL FOX
Copy mailed to:                                     UNITED STATES MAGISTRATE JUDGE

Henry Jackson

-25-

## RECOMMENDATION

Accordingly, Jackson has failed to state a claim for relief that is plausible on its face. For the foregoing reasons, I recommend that OMH's motion to dismiss, Docket Entry. No. 11, be granted.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels, 500 Pearl Street, Room 1310, New York, New York, 10007, and to the chambers of the undersigned, 500 Pearl Street, Room 530, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Daniels. *Failure to file objections within ten (10) days will result in a waiver of objections and will preclude appellate review.* See Thomas v. Arn, 474 U.S. 140, 142, 106 S. Ct. 466, 468 (1985); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992).

Dated: New York, New York  
      August 13, 2012

Respectfully submitted,

*Kevin Nathaniel Fox*  
KEVIN NATHANIEL FOX  
UNITED STATES MAGISTRATE JUDGE

Copy mailed to:

Henry Jackson

-25-